Rebecca LOVELACE, individually and on behalf of all those similarly situated; Ira Newman, individually and on behalf of all those similarly situated, Plaintiffs–Appellants,

v.

SOFTWARE SPECTRUM INC; Judy O. Sims, Defendants–Appellees.

Gerald KLEIN, individually and on behalf of all those similarly situated, Plaintiff–Appellant,

v.

SOFTWARE SPECTRUM INC.; Judy O. Sims, Defendants–Appellees.

No. 95–10338.

United States Court of Appeals, Fifth Circuit.

April 2, 1996.

Roger F. Claxton, Robert James Hill, Kilgore & Kilgore, Dallas, TX, Steven J. Toll, Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Stuart Hubert Savett, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, Philadelphia, PA, for Lovelace, Newman and Klein.

Morris D. Harrell, Timothy W. Mountz, Cynthia B. Asensio, Locke, Purnell, Rain & Harrell, Dallas, TX, for Software Spectrum, Inc. and Sims.

Before JONES, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs Rebecca Lovelace, Ira Newman, and Gerald Klein, individually and on behalf of all those similarly situated, appeal the district court's judgment dismissing with prejudice their securities fraud claims against Defendants Software Spectrum, Inc., and Judy Sims. We affirm.

I

Software Spectrum is a publicly traded Texas corporation engaged in the resale of microcomputer business software. Sims is the chief executive officer of the corporation and chairman of the board of directors. Lovelace, Newman, and Klein purchased shares of Software Spectrum between October 1993 and May 1994. Software Spectrum's stock price fell sharply after the corporation announced disappointing financial results for the quarter ending December 31, 1993. Lovelace and Newman filed suit against Software Spectrum and Sims, alleging securities fraud. Software Spectrum's stock price fell sharply again after the corporation announced that publication of its financial results for the fiscal year ending March 31, 1994, would be delayed due to a change in auditors. Klein then filed suit against Software Spectrum and Sims, also alleging securities fraud. Software Spectrum and Sims filed motions to dismiss both suits for failure to plead fraud with particularity, pursuant to FED.R.CIV.P. 9(b), and for failure to state a claim upon which relief can be granted, pursuant to FED.R.CIV.P. 12(b)(6). After consolidating the suits, the district court entered an order dismissing the claims without prejudice for failure to plead fraud with particularity, finding specifically that Plaintiffs failed to sufficiently plead the scienter element of their securities fraud claims. The order allowed the Plaintiffs twenty days to replead their claims. After the twenty-day period passed without the Plaintiffs repleading their claims, the district court entered judgment dismissing the claims with prejudice. Plaintiffs filed a timely notice of appeal.

II

■ Plaintiffs argue that the district court erred in dismissing their claims for failure to plead fraud with particularity. In a pleading alleging fraud, a plaintiff must state the circumstances constituting fraud with particularity. FED.R.CIV.P. 9(b). We treat a dismissal for failure to plead fraud with particularity under Rule 9(b) as a dismissal for failure to state a claim upon which relief can be granted. *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir. 1993). Therefore, we review the district court's dismissal de novo, as we review a dismissal under Rule 12(b)(6), accepting the complaint's well-pleaded factual allegations as true. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

■ Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters

of which they may take judicial notice. *See* FED.R.EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). The Second Circuit has held that a district court deciding a motion to dismiss a securities fraud action may take judicial notice of the contents of documents filed with the Securities Exchange Commission. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991). We find this approach persuasive, and accordingly we adopt the following rule: When deciding a motion to dismiss a claim for securities fraud on the pleadings, a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC. Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir.1995) (holding that the district court properly refused to take judicial notice of a corporation's Form 10–K to determine a fact in dispute—the number of corporate employees).[1]

▆▆ Plaintiffs' complaint alleges that Software Spectrum and Sims violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, and that Sims violated § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). To establish a claim for securities fraud under these provisions, a plaintiff must prove (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury. *Cyrak v. Lemon*, 919 F.2d 320, 325 (5th Cir.1990). Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976).[2]

▆▆ A plaintiff will not survive a Rule 9(b) motion to dismiss on the pleadings by simply alleging that a defendant had fraudulent intent. In order to adequately plead scienter, a plaintiff must set forth specific facts to support an inference of fraud. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994). Alleged facts are sufficient to support such an inference if they

1. We note our agreement with the following rationale given by the Second Circuit for allowing district courts to take judicial notice of relevant public disclosure documents:

 [I]t is highly impractical and inconsistent with FED.R.EVID. 201 to preclude a district court from considering such documents when faced with a motion to dismiss a securities action based on allegations of material misrepresentations or omissions. First, the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist. Second, the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated. Third, a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents. Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure. Foreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements. Finally, we believe that under such circumstances, a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED.R.EVID. 201(b)(2). This of course includes related documents that bear on the adequacy of the disclosure as well as documents actually alleged to contain inadequate or misleading statements. We stress that our holding relates to public disclosure documents required by law to be filed, and actually filed, with the SEC, and not to other forms of disclosure such as press releases or announcements at shareholder meetings. *Kramer*, 937 F.2d at 774.

2. A plaintiff alleging securities fraud establishes scienter by proving that the defendants acted with knowledge or severe recklessness. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir.), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981). A defendant's omissions or misrepresentations are severely reckless only if they (1) involve an extreme departure from the standards of ordinary care, and (2) present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. *Id.* at 961–62.

either (1) show a defendant's motive to commit securities fraud, or (2) identify circumstances that indicate conscious behavior on the part of the defendant. *Id.*

 Plaintiffs allege that Defendants knew, but did not disclose, that Software Spectrum's earnings were materially affected by financial incentives from its suppliers based on product sales goals. Plaintiffs allege that the Defendants knew prior to the fiscal quarter beginning October 1, 1994, but did not disclose, that earnings for that quarter would suffer due to a failure to meet product sales goals in the previous quarter. Plaintiffs further allege that Defendants stated Software Spectrum's earnings for the first nine months of 1994 in a manner inconsistent with generally accepted accounting principles, and that Defendants changed auditors because their former auditors insisted that credits be removed and earnings restated. We must determine whether these allegations suffice to indicate conscious behavior on the part of Defendants.[3]

A number of our recent cases have addressed the degree of particularity with which a plaintiff must plead a securities fraud claim in order to identify conscious behavior on the part of the defendant. In *Tuchman,* shareholders brought an action for securities fraud against the corporation and its officers. In an attempt to identify circumstances that indicate conscious behavior on the part of the defendants, the *Tuchman* plaintiffs alleged that corporate officers made contradictory statements regarding the corporation's commitment to quality, the adequacy of the testing of corporate software, the reasons for corporate telephone network outages, and the reasons for the corporation's economic downturn. 14 F.3d at 1069. We found these allegations inadequate to indicate conscious behavior on the part of the defendants, noting that "the complaint contains no assertion of any fact that makes it reasonable to believe that the defendants knew that any of their statements were materially false or misleading when made." *Id.*

We thus upheld a Rule 9(b) dismissal on the pleadings for failure to adequately plead scienter. *Id.* at 1068–70.

In *Melder v. Morris,* 27 F.3d 1097 (5th Cir.1994), shareholders brought an action for securities fraud against the corporation and its officers, directors, accountants, and underwriters. The *Melder* plaintiffs attempted to establish scienter by alleging that the corporation's officers, directors, accountants, and underwriters entered into a conspiracy to inflate the price of the corporation's stock. *Id.* at 1102. We found these allegations insufficient to indicate the defendants' motive to commit securities fraud, and we also found them insufficient to identify circumstances that indicate conscious behavior by the defendants. *Id.* at 1102–04. We thus upheld a Rule 9(b) dismissal on the pleadings for failure to adequately plead scienter. *Id.* at 1100–04. In so holding, we noted that rote conclusory allegations that the defendants "knowingly did this" or "recklessly did that" fail to meet the heightened pleading requirements of Rule 9(b). *Id.* at 1104.

In the present case, Plaintiffs' first allegation claims that Defendants knew, but did not disclose, that Software Spectrum's earnings were materially affected by financial incentives from its suppliers based on product sales goals. As required by law, Software Spectrum filed its 1991 and 1992 prospectuses with the SEC. Both of these documents contain a paragraph, under the general heading "Risk Factors," titled "Reliance on Rebates, Marketing Funds and Volume Discounts." This paragraph discloses that Software Spectrum, "[a]s part of its supply agreements with certain publishers and distributors ... receives substantial incentives in the form of rebates, cooperative advertising funds, market development funds and volume purchase discounts," the reduction or discontinuance of which "could have a material adverse effect" on Software Spectrum's business and financial results. Thus, Defendants did disclose that Software

---

3. Plaintiffs have not attempted to establish scienter by alleging facts that show Defendants' motive to commit securities fraud. Therefore, Plaintiffs face the more stringent standard of identifying circumstances that indicate conscious

behavior by the Defendants. Under this standard, "the strength of the circumstantial evidence must be correspondingly greater" than the evidence required under the motive standard. *Tuchman,* 14 F.3d at 1068.

Spectrum's earnings were materially affected by substantial incentives from suppliers in the form of rebates. In light of the language in Software Spectrum's prospectuses, Plaintiffs' allegation is reduced to the claim that although Defendants disclosed reliance on rebates generally, Defendants did not specifically disclose reliance on rebates based on sales goals. At most, Plaintiffs' first allegation indicates that Defendants' disclosure was incomplete; however, such an allegation falls far short of identifying conscious behavior on the part of Defendants. *See Tuchman,* 14 F.3d at 1069 (holding allegations that corporate officials made contradictory statements about the corporation's commitment to quality, the testing of corporate software, the reasons for corporate network outages, and the reasons for the corporation's economic downturn insufficient to identify conscious behavior on the part of defendants).[4]

■■■ Plaintiffs next allege that, according to industry custom, rebates paid by a supplier in one quarter are based on a company's sales of the supplier's products in the previous quarter. Accordingly, Plaintiffs allege, Defendants must have known, but did not disclose, that Software Spectrum's earnings for the fiscal quarter beginning October 1, 1994, would suffer because Defendants must have known that Software Spectrum failed to meet product sales goals in the previous quarter. However, Plaintiffs do not plead specifically what Software Spectrum's rebate arrangements with its suppliers actually were, and consequently do not allege who at

Software Spectrum would have had knowledge about the award of future rebates or when such a person would have obtained such knowledge. In fact, Plaintiffs' bare allegation about industry custom is precisely the type of conclusory allegation that motivated the heightened pleading standards of Rule 9(b) in the first place. *See Tuchman,* 14 F.3d at 1067 ("In securities fraud suits, this heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and *prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs.*") (emphasis added). Therefore, we find that this allegation also fails to set forth specific facts that indicate conscious behavior on the part of Defendants.[5]

■■■ Lastly, Plaintiffs allege that Defendants published Software Spectrum's earnings for the first nine months of 1994 in a manner inconsistent with generally accepted accounting principles,[6] and that Defendants changed auditors because their former auditors insisted that credits be removed and earnings restated. As we have stated previously, "[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information." *Fine v. American Solar King Corp.,* 919 F.2d 290, 297 (5th Cir.1990), *cert. dismissed sub. nom., Hurdman v. Fine,* 502 U.S. 976, 112 S.Ct.

---

4. Software Spectrum's 1994 Form 10–K, filed after the original complaint in this case, disclosed that the corporation's earnings were materially affected by financial incentives based on sales goals. Plaintiffs allege that this disclosure constitutes an admission by Defendants that their prior disclosures were misleading. Such an allegation tells us nothing about whether the Defendants knew that any of their prior disclosures "were materially false or misleading *when made.*" *Tuchman,* 14 F.3d at 1069 (emphasis added). A corporation does not admit that previous SEC filings are misleading every time that it amends or updates language in new filings. In short, this allegation does not indicate conscious behavior on the part of Defendants.

5. We note that we have rejected similar conclusory allegations in previous cases. *See, e.g.,*

*Melder,* 27 F.3d at 1102–04 ("Instead of pleading with particularity, the plaintiffs offer only rote conclusions such as: 'In the course of rendering services to URCARCO, Coopers and Lybrand either obtained knowledge of, or recklessly disregarded, the facts alleged herein.' ").

6. We will not consider, in deciding a motion to dismiss on the pleadings, the contents of relevant public disclosure documents for the purpose of proving the truth of their contents. *See supra* note 1 and accompanying text. However, we note in passing that, as part of Software Spectrum's 1994 Form 10–K, Software Spectrum's new auditors gave an unqualified opinion that Software Spectrum's earnings were presented fairly and in conformity with generally accepted accounting principles.

576, 116 L.Ed.2d 601 (1991).[7] Moreover, the fact that Defendants changed auditors because of a difference in judgment about generally accepted accounting principles does not establish conscious behavior on the part of Defendants. The term "generally accepted accounting principles," as we have often noted, is a term of art encompassing a wide range of acceptable procedures, such that "an ethical, reasonably diligent accountant may choose to apply any of a variety of acceptable accounting procedures when that accountant prepares a financial statement." *Godchaux v. Conveying Techniques, Inc.,* 846 F.2d 306, 315 (5th Cir.1988). Therefore, we find that Plaintiffs have not alleged specific facts sufficient to indicate that Defendants consciously published materially false information.

Considering all of the allegations in Plaintiffs' complaint, we find that Plaintiffs have failed to set forth specific facts sufficient to indicate conscious behavior on the part of Defendants. We are not unsympathetic to Plaintiffs' predicament. The poor financial performance of Software Spectrum has surely cost them substantial investment sums. However, § 10(b) provides a remedy only for those victimized by securities fraud, and Rule 9(b) requires that such claims be pleaded with particularity. Plaintiffs have failed to do so in this case. Because we find that Plaintiffs have failed to adequately plead scienter under Rule 9(b), we hold that the district court did not err in dismissing Plaintiffs' claims for failure to plead fraud with particularity.[8]

### III

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Plaintiffs' claims with prejudice.

---

**7.** *See also Melder,* 27 F.3d at 1103 ("The plaintiffs' boilerplate averments that the accountants violated particular accounting standards are not, without more, sufficient to support inferences of fraud.").

**8.** Plaintiffs also argue that the district court erred in dismissing their § 20(a) claim against Sims as a "controlling person." Because the Plaintiffs have failed to state a claim for any predicate securities fraud offense under § 10(b), Plaintiffs have necessarily failed to state a claim against Sims for "controlling person" liability under § 20(a). *Dennis v. General Imaging, Inc.,* 918 F.2d 496, 509 (5th Cir.1990). Therefore, the district court did not err in dismissing Plaintiffs' claim against Sims for "controlling person" liability.