VIGILANT INSURANCE
COMPANY, Plaintiff,

v.

C. & F. BROKERAGE SERVICES and M. & M. Institutional Services, Inc./Broadway Enterprises, Inc., Sal Fontana, Charles Chiaramonte and Frank Procida, Defendants.

No. 85 Civ. 0270 (KTD).

United States District Court,
S.D. New York.

Oct. 23, 1990.

Lambert & Weiss, New York City, (Mitchell J. Winn, of counsel), for plaintiff.

Remo Tinti, New York City, for M. & M. Institutional Services, Inc.

Brandeis, Bernstein, New York City (Hartley T. Bernstein, Carl M. Kuntz, of counsel), for defendant Frank Procida.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Vigilant Insurance Company, ("Vigilant"), brings this action claiming violations of: (1) § 10(b) and rule 10b–5 promulgated thereunder, of the Securities and Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j (1982); (2) 18 U.S.C. §§ 1961 *et seq.* of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) common law fraud; (4) common law conversion; and (5) for money had and received. Defendants are C. & F. Brokerage Services ("C & F"), M. & M. Institutional Services, Inc./Broadway Enterprises, Inc. ("M & M"), Sal Fontana, Charles Chiaramonte and Frank Procida, (collectively the "finders"). Only one defendant, Frank Procida, a principal of C & F, moves to dismiss counts 1–5 and 7–8 of the amended complaint.[1] Vigilant cross-moves pursuant to Fed.R.Civ.P. 15(a) to further amend the complaint to add Ralph Anselmo as a defendant, to enter a default against M & M, and to sever and continue the action as to the remaining defendants.

## FACTS

Vigilant, a New Jersey corporation, insures M.J. Meehan & Co. ("Meehan"), a partnership with its principal place of business in New York, against losses occasioned by employee dishonesty. Meehan is a New York Stock Exchange specialist firm engaged in the buying and selling of only specific securities that are listed on the exchange, which insures a continuous trading market in those securities. C & F is a New York corporation. M & M is a foreign corporation which has its principal place of business in New York. Both C & F and M & M are companies which arrange stock loans with other brokerage firms. Meehan enlisted C & F and M & M as "finders," namely, middle-men, to obtain stocks from other brokerage houses in order to fund Meehan's commitments to its own clients and cover its position in the market. In turn, Meehan provides cash collateral to the finders for the loans. Once Meehan covers its position in the market, it returns the stocks and receives back the collateral. In addition to receipt of its collateral, Meehan is supposed to get an interest payment, or "rebate." Meehan claims that it never received proper rebates in the aforementioned finder transactions.

## DISCUSSION

Meehan alleges that C & F and M & M schemed to defraud it of rebates on its stock borrowings and loans. Fraud is posited under three federal statutes: mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); and securities fraud (18 U.S.C. § 1961 and 15 U.S.C. § 78j). Each type of fraud constitutes the basis for a predicate act under RICO.

■ Rule 9(b) of the Federal Rules of Civil Procedure, read together with rule 12(b)(6) requires that allegations of fraud be made with particularity. This is to insure that a defendant has fair notice of the claim, to protect a defendant's reputation and goodwill, and to reduce the number of strike suits. *Di Vittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir.1987). The complaint must specify the time, place, speaker and content of the alleged fraud. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). When there are multiple defendants, allegations of fraud may not usually be made collectively, but in this case where the individual defendants, including Procida, were principals of C & F and M & M, claims may be made collectively. *See Ballan v. Wilfred American Educational Corp.*, 720 F.Supp. 241, 253 (E.D. N.Y.1989) (fraud in SEC filings may be collectively alleged as to principal and inside directors).

■ Vigilant alleges that, in each transaction, an agreement was made whereby money was fraudulently retained by C & F and/or M & M through one or more principals or agents. Specifically, it is alleged that from January 1982 to March 1984, C & F engaged in a scheme to defraud Meehan

---

1. This case was transferred to me upon Judge Walker's elevation to the Second Circuit. Judge Walker allowed Vigilant to amend its complaint and append a sworn statement.

**438**

by conspiring with certain of its employees to fraudulently retain rebate monies owed after Meehan returned the collateral. Vigilant believes it is entitled to proceed against Procida and conduct discovery because knowledge and participation in the scheme to defraud Meehan can be imputed to him. Plaintiff's Memo at 4, Complaint ¶¶ 22 et seq. Procida contends, however, that these allegations, based upon information and belief, are insufficient to create personal liability.

Individual liability will attach if the corporate principal was personally connected with the wrong. *Brunswick Corp. v. Waxman*, 459 F.Supp. 1222 (E.D.N.Y.1978), *aff'd*, 599 F.2d 34 (2d Cir.1979). In the case at bar, it is alleged, albeit sketchily, that Procida was personally involved in the scheme. Further:

> [i]n the case of a small corporation, where the boundaries between the corporate entity and the individual director are often permeable, it cannot be said as a general rule that allegations sufficiently directed against the corporate entity fail to detail, for purposes of Rule 9(b), the actions of its director with sufficient particularity. Nor does this contravene the rationales for Rule 9(b). *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1372 (N.D.Ga.1984), *aff'd in part and rev'd in part*, 835 F.2d 780 (11th Cir. 1988).

■ It is permissible to plead upon information and belief when the facts necessary to state a cause of action are wholly within the control of the party who is alleged to have committed the wrongdoing, for it would be unfair to allow a party to escape liability merely because a principal employee forms an impenetrable barrier concealing details of the fraud. *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986). This, however, necessitates the inclusion of facts upon which the belief is founded. *Id.* In this case a sufficient statement of the facts is included in the appended statement by William Meehan as to his investigation in the matter. The corporate structure of C & F and the extent to which Procida controls it are matters which are critical in determining liability in this case. Information regarding these matters is wholly within the control of Procida and C & F. Therefore, I find Vigilant has sufficiently stated facts to support its contentions in the amended complaint and attached sworn statement to preclude dismissal at this juncture. Vigilant is hereby given leave to proceed with discovery.

■ Turning now to Procida's claim that the securities law frauds must be dismissed, I note that Vigilant's fifth cause of action alleges violations of § 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 promulgated thereunder. These provisions prohibit making false and misleading statements "in *connection with* the purchase or sale of any security." (emphasis added)

> The purpose of § 10(b) and Rule 10b–5 is to protect persons who are deceived in making securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be. *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir.1984), *cert. denied*, 469 U.S. 884 [105 S.Ct. 253, 83 L.Ed.2d 190] (1984).

The Act is directed at fraud which relates to the value of the securities transaction as an investment. Therefore, to adequately state a cause of action, the misrepresentation must relate to the value of the security. It is clear in the case at bar that the fraud involved stock borrowings and loans. Specifically, Vigilant alleges a scheme whereby C & F and M & M deprived Meehan of interest on the collateral for stock loans. Thus, the fraud alleged regards retention of interest on the collateral and a diversion of proceeds, neither of which affects the worth of the stocks. Since the investment value of the stocks were not affected, the "in connection with" requirement is not satisfied.

Moreover, Vigilant misread the Supreme Court's opinion in *Superintendent of Ins.*

*v. Bankers Life and Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In that case, the court held the "in connection with" requirement satisfied where a plaintiff was duped into believing it would receive the proceeds from the sale of bonds. This proposition, however, does not include the misappropriation of the interest owed on collateral for stock loans as is alleged here. Because "[t]he crux of the present case [i.e. *Bankers Life*] is that [plaintiff] suffered an injury as a result of deceptive practices *touching its sale* of securities as an investor," it is thus distinguishable from the instant case. *Id.* at 12, 92 S.Ct. at 169 (emphasis supplied).

Likewise in *S.E.C. v. Drysdale Secur. Corp.*, 785 F.2d 38 (2d Cir.1986), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986), the court held that misrepresentations regarding the financial condition of a company involved in "repo" market transactions [2] was "in connection with" a sale of securities. Again, in that case, the court emphasized that the "misrepresentation clearly pertained to a significant part of the *consideration offered* ... part of the consideration offered by [defendant] was a promise—in repos to repurchase and in reverse repos to resell—that its insolvency rendered worthless ... (defendant's) financial strength was essential to the value received by the other party in a securities transaction." *Id.* at 42 (emphasis supplied). In the case at bar, however, the fraud occurred after the transaction was complete. It was not related to the investment value of the security. As such, the conversion of rebate interest on collateral deposited for borrowing securities does not state a cause of action under the securities laws. Having failed to allege the requisite "connection" with "the purchase or sale" of a security, count five is dismissed.

Finally, Vigilant seeks leave to amend its complaint to add Ralph Anselmo as a defendant. It is axiomatic that the Federal Rules of Civil Procedure provide for liberal amendment of pleadings. As such, Vigilant may so amend its complaint.

For the foregoing reasons, only count five is dismissed. The complaint otherwise survives in its entirety. Vigilant is granted leave of court to amend its complaint, adding Anselmo as a defendant. Additionally, Vigilant seeks a default as against M & M and Broadway for failure to answer or move with respect to the complaint. Vigilant is hereby directed to submit the appropriate default judgments within ten days of the date of this order.

SO ORDERED.

---

2. "Repo" transactions involve agreements to sell securities whereby, at a later date, there is a repurchase by another party at a fixed price. The Repo arrangement imposes a contractual obligation to deliver identical securities on the settlement date, but allows the repo lender to deal in the collateral. *S.E.C. v. Drysdale Secur. Corp.*, 785 F.2d 38, 41 (2d Cir.1986).